UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CALMER COTTIER,<br><br>                    Movant,<br><br>     vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | **5:20-CV-05071-KES**<br><br>**ORDER ADOPTING REPORT AND<br>RECOMMENDATION** |

Movant, Calmer Cottier, filed a petition under 28 U.S.C. § 2255 in the above-entitled matter, challenging his criminal conviction and sentencing in the underlying criminal case 15-CR-50151. Docket 1. The government filed a motion to dismiss the petition. Docket 24. Magistrate Judge Veronica Duffy issued a report and recommendation on the government's motion, advising the court to dismiss all but one of Cottier's claims. Docket 32 at 27; Docket 33 at 27. The court adopted Magistrate Judge Duffy's recommendation, dismissing all but one claim alleging ineffective assistance of counsel (IAC). Docket 35.

Magistrate Judge Duffy held an evidentiary hearing on the surviving IAC claim. Docket 44. Following the hearing, Magistrate Judge Duffy issued a written report and recommendation, advising that the court grant Cottier's IAC claim. Docket 45. The claim alleges that counsel was deficient during plea negotiations and that Cottier was prejudiced at sentencing as a result. *See id.* at 42; *see also* Docket 1 at 6-8. The government filed seven objections to

Magistrate Judge Duffy's report. Docket 51. Cottier did not object to the report and did not file a response to the government's objections.

## BACKGROUND

The court recounts the facts here as they are relevant to the government's objections. Magistrate Judge Duffy provides a more complete summary of the factual and procedural background to this case in her report and recommendation. *See* Docket 45 at 2-42.

This matter concerns Cottier's conviction for aiding and abetting second degree murder in the underlying criminal case 15-CR-50151. *See* Docket 1; 15-CR-50151, Docket 389. On December 15, 2015, Cottier, along with multiple co-defendants, was charged with second degree murder and aiding abetting the commission of second degree murder in relation to the death of Ferris Brings Plenty on the Pine Ridge Indian Reservation. 15-CR-50151, Docket 1. Cottier made his initial appearance in this matter on December 23, 2015. 15-CR-50151, Docket 40. At the initial appearance, Nathaniel Nelson was appointed to represent Cottier. *Id.*

Nelson graduated from the University of South Dakota School of Law in 2013. Docket 44 at 10. At the time he was appointed, Nelson had been in practice for approximately two years and was an associate lawyer at the Rensch Law Firm, working for Tim Rensch. *Id.*; 15-CR-50151, Docket 40. Before representing Cottier, Nelson had tried one misdemeanor DUI trial in state court. Docket 44 at 12. Nelson had represented several clients in federal court in cases dealing with drug conspiracies and child abuse, all resolving

2

short of trial. *Id.* at 14, 16. Nelson had also observed at least one trial where Tim Rensch represented the defendant, and Nelson assisted in preparing documents for several other criminal matters. *Id.* at 12-13.

After reviewing discovery in this case, Nelson learned that the victim, Ferris Brings Plenty, died in an altercation in which various weapons – including a machete, a rake handle, and a cinder block – were alleged to have been used. *Id.* at 17-18. The discovery demonstrated that several co-defendants alleged that Cottier threw a cinder brick at Brings Plenty during the altercation. *Id.* at 36. Cottier consistently denied throwing the cinder block at Brings Plenty. *See id.* at 125-26. But Cottier had already given multiple statements to the Federal Bureau of Investigation, in which he made contradictory statements and admitted to hitting Brings Plenty with his fists and feet. 15-CR-50151, Docket 471 at 20-21 (describing multiple interviews to FBI), 38 (describing contradictions between first and second interview), 48-49 (detailing further contradictions in later interview).

Nelson and the government engaged in a series of negotiations, detailed fully in Magistrate Judge Duffy's report and recommendation. *See* Docket 45 at 4-28. As part of these negotiations, the government made three plea offers to Cottier. *See* Docket 42 at 9, 28, 58. At issue in this matter is the government's second formal plea offer, which was communicated on July 25, 2016. *See id.* at 28-35. Like the first offer – conveyed to counsel on March 16, 2016 – the July offer required Cottier to plead guilty to second degree murder. *Id.* at 9, 11, 30. Also like the first offer, the July offer promised Cottier a two-level decrease in

his United States Sentencing Guidelines (USSG) baseline offense level for accepting responsibility. *Id.* at 12-13, 31-32. The government further agreed in both offers to make a sentencing recommendation within the USSG and did not require Cottier to cooperate. *Id.* at 13-14, 23, 32-33, 43. The July offer modified the March offer to include a recommendation of a two-point reduction for Cottier's role as a "minor participant." *Id.* at 13-14 (showing no minor participant reduction); 33 (showing minor participant reduction). Though the prosecutor on the case, Megan Poppen, had asked for Cottier to be a "minimal participant" who would receive a four-point reduction to his USSG calculation, her supervisor would not approve that provision. *Id.* at 44-45. The government estimated that Cottier's USSG range would be 97-121 months if he accepted the July offer, assuming that Cottier was in criminal history category I. *See id.* at 46.

Nelson expected to receive a different plea offer from the government and conveyed this sentiment to Poppen in an email. *Id.* at 45. The government responded that Nelson misconstrued the government's representations during an in-person meeting and that the government understood the discussion to mean that Cottier would not agree to plead guilty to second-degree murder. *Id.* at 44-45. The government was unwilling to offer a plea to manslaughter. *Id.* at 44. Additionally, the parties disputed the language in the factual basis statement about the cinder block that co-defendants alleged Cottier threw at Brings Plenty. Docket 25-1. The July offer originally stated that Cottier threw the cinder block at Brings Plenty. Docket 42 at 37. Cottier was adamant that

he did not throw the brick, and the government agreed to change the language to say that other people *claimed* Cottier threw the brick. Docket 42 at 48.

Nelson does not remember what advice he gave Cottier about the July offer. Docket 44 at 93-94. But Nelson expects that he told Cottier what he tells most clients: "All I can tell you is what the facts are, what the law is, what likely outcomes will be, but you're the one that has to make that decision." *Id.* at 96. Nelson testified that he "almost never tell[s] people, you have to take this or should take this." *Id.* Cottier, however, remembers Nelson advising him not to take the July offer. *Id.* at 150. Cottier stated that Nelson told him the odds at trial were "65 my way, 35 their way . . . of beating this case." *Id.* at 152. Cottier does not remember any specific legal strategy or defense that would justify these odds but said that Nelson spoke with him about "the lack of evidence and everybody having different stories[.]" *Id.* at 153.

Ultimately, Cottier decided to reject the July plea agreement offer. *See* Docket 44 at 95. He communicated his decision to Nelson either directly or through his girlfriend at the time. *Id.* The government made one final plea offer less than a month before trial, which was sent to counsel on May 9, 2017. Docket 42 at 58; *see* 15-CR-50151, Docket 313 (showing trial date of June 5, 2017). This offer was identical to the March 2016 offer and did not include the reduction for Cottier being a minor participant. Docket 42 at 10-16, 59-65. Cottier again rejected this plea agreement, and the case proceeded to trial. Docket 25-4; *see generally*, 15-CR-50151, Docket 380.

At a pretrial conference held on May 30, 2017, the parties settled jury instructions. 15-CR-50151, Docket 447 at 67. Nelson argued for a heightened burden of proof on the government, as compared to the instructions proposed by the court. *Id.* at 47-56. The court rejected Nelson's proposal and proceeded with the instructions as proposed. *Id.* at 51-52.

Cottier was convicted at trial of aiding and abetting second-degree murder and conspiracy to commit assault. 15-CR-50151, Docket 389. The jury acquitted him of solicitation to commit a crime of violence. *Id.* At sentencing, the court calculated Cottier's USSG sentencing range to be 262 to 327 months' imprisonment and his total offense level to be 38. 15-CR-50151, Docket 479 at 21. Although Cottier was in criminal history category II, the court granted Nelson's motion for a downward departure on the basis that Cottier's criminal history category overrepresented the seriousness of his criminal history. *Id.* at 24-28. Based on the amended criminal history category, Cottier's USSSG sentencing range was 235 to 293 months' imprisonment. *Id.* at 28. The court sentenced Cottier to 210 months' imprisonment. 15-CR-50151, Docket 444. The court downward varied from 235 months to 210 months based on the potential sentencing disparity between Cottier and co-defendants in the trial, all of whom the court believed to be equally responsible. 15-CR-50151, Docket 479 at 61-62.

Cottier appealed his conviction to the Eighth Circuit Court of Appeals. *See United States v. Cottier*, 908 F.3d 1141 (8th Cir. 2018). Nelson represented Cottier during the appeal. *Id.* Cottier raised five issues for the court's

determination, the most relevant of which was whether the district court's second-degree murder instruction was correct. *Id.* at 1144-45. The Eighth Circuit reviewed Cottier's argument, as well as the underlying instruction, and upheld the district court's articulation of the law. *Id.* at 1147, 1151. Cottier filed a petition with the United States Supreme Court seeking a writ of certiorari on this issue, but the Court denied his petition on December 9, 2019. *See Cottier v. United States,* 140 S.Ct. 354 (2019).

Cottier timely filed the above-entitled petition for habeas relief under § 2255 on November 20, 2020. Docket 1; *see also* 28 U.S.C. § 2255(f)(1) (stating that a one-year statute of limitations applies from the time the judgment of conviction becomes final). Having disposed of all other claims in the original complaint, this court turns to Cottier's remaining claim for IAC under the Sixth Amendment. *See* Docket 35.

## LEGAL STANDARD

### I.     Standard of Review

The court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations as to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). In conducting its de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *United States v. Craft,* 30 F.3d 1044, 1045 (8th Cir. 1994). Magistrate Judge

Duffy provided a full, complete, and well-analyzed report and recommendation addressing all the issues raised by both parties. The court adopts the recommendations and addresses the issues raised by the government in its objections.

## II.    Ineffective Assistance of Counsel

The "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). "Critical stages include arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea." *Id.* Additionally, "[a] criminal defendant has a constitutional right to counsel on the first direct appeal." *Ahumada v. United States*, 994 F.3d 958, 960 (8th Cir. 2021). "This 'encompasses the right to effective assistance of counsel.' " *Id.* (quoting *Steele v. United States*, 518 F.3d 986, 988 (8th Cir. 2008)).

The Supreme Court articulated the test for determining if "counsel's assistance was so defective as to" violate the defendant's constitutional rights in *Strickland v. Washington*, 466 U.S. 668, 687 (1970). "First, the defendant must show that counsel's performance was deficient." *Id.* Deficient performance exists when "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The court's inquiry into the adequacy of representation is highly fact-specific, and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

"Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. This element requires the defendant to demonstrate that counsel's error or errors were so grave as to render the result of the trial unreliable, thus depriving the defendant of a fair trial. *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* In the context of plea negotiations, when "the ineffective advice led not to an offer's acceptance but to its rejection[,]"

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

## DISCUSSION

After a thorough review of the record in this matter, Magistrate Judge Duffy found that Nelson's performance was deficient and that Cottier was prejudiced by counsel's performance. *See* Docket 45. Magistrate Judge Duffy found that Nelson did not properly advise Cottier because Nelson did not understand the law of aiding and abetting second-degree murder and consequently misrepresented the risk of proceeding to trial. *Id.* at 60-66. Further, Magistrate Judge Duffy found that this misrepresentation caused Cottier to reject the plea offer and, consequently, face a higher sentence. *Id.* at

69-75.  The government objects to Magistrate Judge Duffy's findings on seven grounds. Docket 51.

## I.      Objection 1 – Cottier's Testimony about the Plea Offer

First, the government objects to Magistrate Judge Duffy's finding that "Cottier would have accepted the July 2016 plea agreement if he had been properly advised about aiding and abetting." Docket 51 at 3. The government notes that "[a]ny conclusion that Cottier would have accepted the plea is speculative[]" and that "every indication is that [Cottier] did not believe he was involved in the murder." *Id.* at 3-4. The government specifically rejects the proposal that Cottier accepted the plea offer for a six-week period before deciding to proceed to trial. *Id.* at 4.

As an initial matter, the court notes that, as with all counterfactuals, a degree of speculation is unavoidable in determining whether Cottier would have accepted the plea if he had been properly advised. But that speculation is not so rampant as the government suggests. For example, the government argues that the record does not show that Cottier ever accepted the July offer before later withdrawing his acceptance. *Id.* at 4-5. Contemporaneous emails, however, suggest that Cottier was prepared to accept the July plea offer. *See* Docket 42 at 49. On September 13, 2016, Nelson sent an email to Poppen that stated that Cottier would "sign the factual basis with [Nelson's] proposed changes included[.]" *Id.* Poppen responded with further edits, all centering on the language about whether Cottier threw a brick at Brings Plenty. *Id.* Although the parties were still negotiating in these exchanges, the negotiation appeared

to be reaching a resolution, with only relatively minor points of contention. Crucially, the negotiations at this point concerned only what should be included in the factual basis statement, and not the charge to which Cottier would plead guilty. *See id.*

Additionally, both Cottier and Nelson testified that they remember Cottier accepting the plea agreement for some period of time. Docket 44 at 95, 154. Specifically, Nelson testified that: "When I met with [Cottier] in Pierre[,] he agreed to take a plea." *Id.* at 95. Nelson added that "but then that following week, either [Cottier] or his girlfriend had contacted me saying that [Cottier] no longer wanted to go through with [the plea]." *Id.* Cottier corroborates this testimony, stating that he told Nelson that he "changed [his] mind" and would no longer accept the plea. *Id.* at 154. The court credits this testimony and finds that Cottier accepted the July 2016 plea agreement orally at some point before withdrawing.

The government next argues that the court should not credit Cottier's testimony that, absent Nelson's advice, he would not have withdrawn his acceptance of the July plea agreement. Docket 51 at 5-6. The government contends that Cottier is an unreliable witness and points to various remarks made by Cottier that Magistrate Judge Duffy found contravened by the record evidence. *See id.* But the government does not identify what portions of the record contradict Cottier's testimony, and the burden to identify relevant record evidence rests with the parties, not the court. *See id.*; *cf. Jaurequi v. Carter Mfg. Co., Inc.*, 173 F.3d 1076, 1085 (8th Cir. 1999) ("[A] district court is not

11

obligated to wade through and search the entire record for some specific facts . . . .") (internal quotations omitted). Furthermore, many of the contested statements are not assertions, but lapses in memory. *See* Docket 51 at 5-6. Such lapses are particularly common when discussing legal concepts. *See id.* The court does not expect perfect recollection on events that occurred many years ago and that require a layman to reflect on the nuances of a law. Thus, these alleged contradictions are not persuasive. Having reviewed the record in its entirety, the court adopts Magistrate Judge Duffy's finding that Cottier would have accepted the July offer had he understood the law as applied to his case.

Lastly, the government argues that Cottier cannot prevail because the evidence in this case is tightly balanced, and "[t]here is a strong presumption counsel provided adequate assistance." Docket 51 at 8. This presumption, however, applies to whether counsel's strategic decisions where adequate as a matter of law. *See Strickland*, 466 U.S. at 689-690. The government does not cite, nor is the court aware of, any case which applies a similarly favorable presumption to the court's determination of factual matters and witness credibility. *See* Docket 51 at 8.

To the extent that the government argues that Nelson's performance was adequate even if Cottier's testimony is accepted, this argument is unpersuasive. As more thoroughly discussed *infra* at Section III, although the court recognizes the deference afforded to counsel's decisions, this deference is not without limits. In the context of guilty pleas, "the attorney has the duty to

advise the defendant of the available options and possible consequences."
*Beckham v. Wainwright*, 639 F.2d 262, 2677 (8th Cir. 1981). A misstatement of
the law – and particularly a misstatement of the essential elements – deprives
the defendant of an understanding of his available options and possible
consequences. Thus, such a misstatement is "not within the range of
competence demanded of attorneys in criminal cases[]" and is deficient under
the *Strickland* standard. *Hawkman v. Parratt*, 661 F.2d 1161, 1170 (8th Cir.
1981). The government's objection is overruled.

## II.     Objection 2 – Causation

The government's second objection concerns whether "Cottier's lack of
understanding of aiding and abetting had anything to do with Nelson." Docket
51 at 9. Cottier does not clearly remember what Nelson told him about aiding
and abetting, and admits that he "still do[es not] fully understand" aiding and
abetting law despite the concept having been recently explained to him. *See*
Docket 44 at 152, 164-66. Thus, the government argues that Cottier's lack of
understanding was not due to Nelson's performance, and that Cottier would
have made the same decision given proper advisement. Docket 54 at 9-11.
Essentially, the government contests that Nelson caused Cottier's
misunderstanding of law.

The court agrees that Cottier did not – and apparently does not –
understand the law of aiding and abetting. *See* Docket 44 at 152, 164-66. But
Cottier's understanding of the law is not dispositive. The law often involves
complicated concepts that clients may not understand. Rather, clients

regularly base their decisions on their lawyer's advice about how the facts of their specific case will apply. The question, thus, becomes not whether Cottier understood the law, but whether Nelson's ultimate advice about the risks of a plea versus proceeding to trial influenced Cottier's decision. That is to say, Cottier need not understand the underlying legal principle but only how his attorney advised him that principle would apply in his circumstances.

As the court explains *infra* at Section III, Nelson did not understand the law of aiding and abetting at the time of Cottier's trial. *See* Section III. Because of this misunderstanding, Nelson was unable to accurately advise Cottier of the likely consequences of a plea of guilty versus proceeding to trial. *See Hawkman*, 661 F.2d at 1170. Cottier testified under oath that Nelson's explanation of the case and the likelihood of a conviction caused Cottier to reject the July offer. Docket 44 at 150-155. Specifically, Cottier recalled that Nelson advised him that there was a 65% chance of prevailing at trial, that he would be "shooting himself in the foot" if he accepted the deal, and that Cottier should reject the deal. *Id.* at 149. Nelson, by comparison, does not remember what he told Cottier. Docket 44 at 97. Though this case involves a careful analysis of the facts – and though it is not a clear case for either side – the court ultimately credits Cottier's testimony that he would have accepted the July offer absent Nelson's advice. The court finds causation in this matter and overrules the government's second objection.

14

### III.    Objections 3 and 4 – Nelson's Understanding of Aiding and Abetting

The government's third and fourth objections both relate to Nelson's understanding of aiding and abetting. Specifically, the government's third objection contests "the Magistrate Judge's conclusion that Nelson's misunderstanding of the law was shown 'throughout the record, notably at the pre-trial conference.' " Docket 51 at 12. The fourth objection concerns "the Magistrate Judge's conclusion that 'Mr. Nelson's ferv[o]r when arguing for modification of instruction number 4 can only be justified by his foundational misunderstanding of aiding and abetting.' " *Id.* at 14 (alteration in original).

The government argues that, although Nelson misstated the law at various points throughout the record, these misstatements were strategic and a part of his advocacy on behalf of Cottier. *See id.* at 12-16. The government focuses on Nelson's statements at the pretrial conference, in which he argued for a heightened burden on the prosecution that was not supported by the case law at that time and was rejected by the Eighth Circuit on appeal. *See id.*; *see also Cottier*, 908 F.3d at 1147. Additionally, the government argues that Nelson's current understanding of the law on aiding and abetting is not dispositive as to his understanding at the time of the case. *See* Docket 51 at 15.

As an initial matter, the court agrees that whether Nelson understood the law at the time of the evidentiary hearing – seven years after his representation of Cottier – is not dispositive. Rather, the question is whether Nelson understood the law at the time he represented Cottier. The record on this point

15

is notably sparse. Nelson did not memorialize all of his conversations with Cottier, and some memos or emails may have been lost to time. *See* Docket 44 at 28, 123-24. Nor is there ample testimony of what Nelson discussed with Cottier. *See* Docket 44 at 68-69, 94, 128, 152, 171 (demonstrating sparse memories of both Nelson and Cottier). But to the extent that documentation has survived and is before the court, it does not bolster the government's contention that Nelson understood the law of aiding and abetting at the time he represented Cottier. At no point does Nelson correctly explain the law of aiding and abetting or apply it to the facts of Cottier's case. *See generally* Dockets 42-43. Nor did the prosecution appear to believe that Nelson understood the law, at least early in his representation of Cottier. After reviewing an email exchange between Nelson and Poppen, AUSA Kathryn Rich commented in a January 27, 2016 email that "[m]aybe we should also send [Nelson] a copy of the definition of 'aiding & abetting[.]' " Docket 42 at 7.

Further, Nelson admits that he did not understand the law of aiding and abetting at the time of his appointment, although he contends that he subsequently researched the law and came to an accurate understanding. *See* Docket 44 at 114 ("I do know at one point that I was probably confused about [aiding and abetting law]."). The government submits, and the court acknowledges, that Nelson printed off and highlighted the relevant sections of a variety of cases dealing with the law of aiding and abetting. *See* Docket 43 at 1-86. But, as every first-year law student quickly realizes, reading a case does not necessarily equate with understanding it. Thus, this research merely

16

demonstrates that Nelson *attempted* to learn the law, not that he ever succeeded in that venture.

The most complete, contemporaneous statements by Nelson surviving in the record are those he made at the pre-trial conference in case 15-CR-50151. Under element one of the proposed jury instructions on aiding and abetting second degree murder, the jury was required to find that Cottier knew "that the assault of another individual was being committed." 15-CR-50151, Docket 474 at 47. Nelson requested that the instruction for element one be amended to read that Cottier knew "that the killing of another individual was being committed." *Id.* The court rejected the proposed amendment. *Id.* at 47-48. An exchange with the court followed in which Nelson made the following argument:

> [I]f somebody is going to be found guilty of second degree murder through aiding and abetting, I think the language in here shouldn't just be assault, I think it should be something more substantial that goes to the actual crime that he's alleged to have committed, which is, frankly, essentially killing somebody. So just a brief alteration of that word "assault" to "assault with a deadly weapon," possibly, or "assault with malice . . . aforethought," because the way this is read, a juror could easily just find that because somebody got in a fight, a fist fight, that he could be found aiding and abetting second degree murder.

*Id.* at 49.

The court rejected Nelson's argument, explaining that the government must prove "that [Brings Plenty] was killed" but that the government did not have to "prove that as the events were taking place, that the intent of the people involved in assaulting Ferris Brings Plenty . . . was to kill him." *Id.* at

17

50. Rather, to be found guilty, element two required the defendants "to act with malice aforethought which can be acting with an intent willfully to act in a callous and wanton disregard to the consequences of human life . . . ." *Id.* Nelson clarified his position, stating that:

> A big portion of the defense of this case is the fact that merely having weapons present doesn't mean that there's an intent to commit an aggravated assault that is more a defense. So the fact that there's just "assault" in this jury instruction negates that possible defense. So I would just propose that it's "assault with a dangerous weapon" or an assault with something more than just that limited form of assault. Because before, like you mentioned, you took out "killing;" that's what I had been anticipating that jury instruction being now from "killing" to "assault" is an extremely low threshold and I feel like there should be something in the middle, and "assault with a dangerous weapon" to me sounds like that would be the fairest.

*Id.* at 51. The court declined to adopt Nelson's proposed language. *Id.* at 55. In making his argument during the pre-trial conference, Nelson did not cite any law, and cannot remember if there was any law upon which he relied. *See* Docket 44 at 82; 15-CR-50151, Docket 474 at 51. Instead, Nelson appears to have relied on a general concept of "fairness" in attempting to persuade the court. *See* Docket 44 at 101; *see also* 15-CR-50151, Docket 474 at 51-52.

On appeal, the Eighth Circuit upheld the jury instructions used by the district court. *Cottier*, 908 F.3d at 1147. The Eighth Circuit explained that "[c]ontrary to [Nelson's] assertion, however, the instruction did not allow the jury to convict [Cottier] of aiding and abetting second degree murder by finding a mere intent to assault Brings Plenty." *Id.* Instead, the instructions required the jury to find that Cottier "[a]cted willfully and with malice aforethought as

18

those terms are referenced in element 2." *Id.* Element two of the instructions,

"which track[ed] circuit precedent verbatim," defined malice aforethought as

"an intent, at the time of a killing, willfully to take the life of a human being, or

an intent willfully to act in callous and wanton disregard of the consequences

to human life." *Id.*

In reaching its holding, the Eighth Circuit relied on *Rosemond v. United

States*, 572 U.S. 65, 76 (2014), which held that:

> [A] person aids and abets a crime when (in addition to
> taking the requisite act) he intends to facilitate that
> offense's commission. An intent to advance some
> different or lesser offense is not, or at least not usually,
> sufficient: Instead, the intent must go to the specific and
> entire crime charged . . .

The mens rea included in the district court's jury instructions – that of malice

aforethought – is the mens rea required by the underlying offense of second

degree murder. *See United States v. Iron Crow*, 970 F.3d 1003, 1009 (8th Cir.

2020) (listing mens rea for second degree murder as malice aforethought).

Thus, the Eighth Circuit found that the jury instructions properly articulated

the mens rea requirement for aiding and abetting second degree murder.

*Cottier*, 908 F.3d at 1147. Conversely, Nelson's argument that Cottier must

know "that the killing of another individual was being committed" was incorrect

because it threatened to raise the mens rea of the offense to the premediation

standard for first degree murder. *See* 18 U.S.C. § 1111(a) (defining murder as

"premeditated killing").

Both Nelson and the government concede that Nelson's argument at the

pre-trial conference was not based on the law as it existed at the time, but

contend that the statements were part of a "fine line" defense that would require Nelson to demonstrate that Cottier was a mere observer to Ferris Brings Plenty's death and that any action Cottier took was in self-defense. *See* Docket 44 at 80-81 (demonstrating that Nelson did not base his argument in existing law); Docket 51 at 13-14. This argument is unpersuasive. As an initial matter, the court notes that an attorney has a duty of candor to the tribunal. *See* S.D.R. of Prof. Conduct r. 3.3 (2004) ("A lawyer shall not knowingly . . . [m]ake a false statement of fact or law to a tribunal[.]"); Model R. of Prof. Conduct r. 3.3 (Am. Bar. Ass'n 1983). Thus, any "strategy" which requires an attorney to misrepresent the law to gain favor to his client is dubious at best.

Furthermore, the language Nelson proposed at the pre-trial conference is more indicative of a misunderstanding than of a calculated strategy. Nelson did not come prepared with any case law. *See* 15-CR-50151, Docket 474 at 51; Docket 44 at 80-81. Rather, Nelson claims he anticipated that the instruction would read "killing" instead of "assault." 15-CR-50151, Docket 474 at 87. Nelson's assumption that the instruction would read "killing" indicates that he mistakenly believed that this language was standard, rather than that he knew he was advocating for an atypical jury instruction. *See id.* Read in combination with the emails between the prosecutors on the case and Nelson's appeal to the Eighth Circuit, the court finds it likely that Nelson simply misunderstood the law when advocating before the court. *See Cottier*, 908 F.3d at 1147; Docket 42 at 7.

That Nelson misunderstood the law is also supported by his statements at the evidentiary hearing in this matter. Again in his testimony, Nelson put forward the "fine line" defense. *See* Docket 44 at 81. He was, however, unable to explain which element of aiding and abetting second degree murder the theory would negate. *Id.* at 92-96. Nelson is also largely unable to explain his strategy in requesting modifications to the court's proposed jury instructions. *Id.* at 87-89. Although during the pretrial conference Nelson requested substitution of the word "killing" for "assault," he appears to take the contrary position during the evidentiary hearing and then believed that "assault" would be the more favorable language to Cottier. *Id.* at 87; *see also* 15-CR-50151, Docket 474 at 47. Ultimately, Nelson remains unable to present a coherent analysis of his trial decisions.

Thus, from the contemporaneous record evidence and from the testimony at the evidentiary hearing, the court finds that Nelson did not accurately understand the law of aiding and abetting second degree murder at the time he represented Cottier. As such, Nelson was unable to properly advise Cottier of that law. The government's third and fourth objections are overruled.

## IV.   Objection 5 – Nelson's Duty to Recommend Acceptance of the Plea Agreement

The government's fifth objection concerns Magistrate Judge Duffy's discussion of whether Nelson had a duty to recommend acceptance of the July offer plea agreement and, if so, whether Nelson breached that duty. Docket 51 at 16-17. In the report and recommendation, Magistrate Judge Duffy does not find whether or not Nelson had a duty to affirmatively recommend the

acceptance or rejection of the plea offers. *See* Docket 45 at 66-69. But if such a duty in fact exists, Magistrate Judge Duffy recommends that Nelson would have been required to recommend that Cottier accept the July offer. *See id.* at 69.

Having reviewed the objection and the underlying section of the report and recommendation, this court dismisses the objection as advisory. Magistrate Judge Duffy did not make a finding as to whether such a duty exists, and the rest of her conclusions do not rest on this determination. Nor does the caselaw governing ineffective assistance of counsel consider a lawyer's "duty" as such. Rather, the relevant standard is whether or not counsel's performance was deficient. Though in some cases a deficient performance may involve the failure to meet a clearly articulated duty, the courts have traditionally shied away from such bright-line rules. *See, e.g., Roe v. Flores-Ortega*, 528 U.S. 470, 478, 480 (2000) (rejecting "a bright-line rule" regarding whether counsel must always consult with the defendant about an appeal). This court keeps with that tradition and declines to articulate a set standard for if and when an attorney must recommend a client accept a plea offer. Although an attorney is obligated to correctly explain the law to a client – and to explain the legal consequences of a given choice – plea negotiations are often highly fact specific and involve a significant use of discretion. Thus, the court declines to articulate a specific duty to recommend a plea agreement or not. The government's fifth objection is overruled.

## V.      Objection 6 – Prejudice

In its sixth objection, the government argues that, even if Nelson's performance was deficient, Cottier did not suffer prejudice. In the context of IAC claims, prejudice occurs when "but for counsel's errors, a reasonable probability exists that the result . . . would have been different." *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013) (alteration in the original) (quoting *Deltoro-Aquilera v. United States*, 625 F.3d 434, 437 (8th Cir. 2010)). The government contends that Cottier would have received the same sentence regardless of his plea, and thus the result would not have been different. Docket 51 at 17-19. To support this argument, the government cites to the sentences of the co-defendants, which were the same as Cottier's. *Id.*[1] But the government concedes, and the court recognizes, that Cottier's USSG guideline range would have been notably lower under the July offer. *Compare* Docket 42 at 46 (determining advisory guideline range to be 97-121 months based on July offer if Cottier was in criminal history category I) *and* 15-CR-50151, Docket 479 at 28 (determining advisory guideline range to be 235-243 months after downward departure to criminal history category I). Because judges often sentence within the advisory guideline range, the court finds that a reasonable

---

[1] The government also disputes causation in this section. That is, the government argues prejudice did not result from Nelson's performance because Cottier would not have accepted the plea offer even with effective counsel. The court addressed the causation argument *supra* Section II.

probability exists that the result would have been different absent counsel's error. The government's sixth objection is overruled.

## VI.    Objection 7 – Proposed Remedies

In *Lafler*, 566 U.S. at 171, the Supreme Court instructs that once a defendant has made a showing that, but for counsel's error, he would have accepted a plea offer, "the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between." The Court further counsels that "[i]n some situations . . . resentencing alone will not be full redress for the constitutional injury." *Id.* If the failure to accept a plea offer resulted in a conviction for counts more serious than those offered in the plea offer, or the imposition of a mandatory sentence not required by the plea offer, "the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal." *Id.*

As Magistrate Judge Duffy recognizes, if Cottier had accepted the plea agreement, he would have been convicted only of aiding and abetting second-degree murder. *See* Docket 42 at 46. By proceeding to trial, he was also convicted of conspiracy to commit assault. *See* 15-CR-50151, Docket 444. But this additional conviction was not for a more serious offense, nor did it impose an otherwise unavailable mandatory minimum term of imprisonment. *See id.; compare* 18 U.S.C. § 1111(b) (providing life sentence as maximum penalty for second degree murder) *and* 18 U.S.C. § 113(a)(3) and (a)(6) (providing 10-year maximum possible penalty for conspiracy to commit assault). Thus, the court

24

does not find it necessary to require the prosecution to reoffer the plea proposal. Instead, the court will schedule a hearing for resentencing in this matter.

## CONCLUSION

Because the record demonstrates that Nelson's performance was deficient and because a reasonable probability exists that the result at sentencing would be different absent that error, the court adopts Magistrate Judge Duffy's report and recommendation. It is

ORDERED that Cottier's claim for ineffective assistance of counsel is granted. It is FURTHER ORDERED that this matter is set for resentencing according to the July 2016 plea offer on June 28, 2024 at 11:00 AM in Rapid City Courtroom 2.

DATED April 30, 2024.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE